**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| LINDA TEARE, | ) | CASE NO. 1:10-cv-01711 |
| | ) | |
| Plaintiff, | ) | JUDGE LESLEY WELLS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| INDEPENDENCE LOCAL SCHOOL | ) | |
| DISTRICT BOARD OF EDUCATION, | ) | |
| *et al.*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendants. | | |

### I.  Procedural Background

On August 4, 2010, Plaintiff Linda Teare ("Teare"), a former student at Independence

Middle School, filed a Complaint (ECF No. 1) alleging four causes of action against Defendants

Independence Local School District Board of Education (the "School Board"), the

Superintendent, Daniel Laurenzi ("Laurenzi"), and teacher Jill Wagner ("Wagner").

Specifically, Teare alleges the following causes of action: (1) a violation of her First Amendment

rights to free speech, including her right not to speak, against all Defendants; (2) a violation of

her rights of familial association as guaranteed by the Fourteenth Amendment against all

Defendants; (3) a deprivation of her constitutional rights resulting in severe emotional distress

due to the School Board's policies; and, (4) intentional infliction of emotional distress against Defendant Wagner.  (ECF No. 1.)

On November 5, 2010, Defendants Laurenzi and the School Board filed their Answer. (ECF No. 6.)  On November 30, 2010, Defendant Wagner filed her Answer.  (ECF No. 6.)

On January 31, 2011, Defendants Laurenzi and the School Board filed a Motion for Judgment on the Pleadings with respect to the counts asserted against them.  (ECF No. 15.) Teare filed a responsive brief on March 2, 2011 (ECF No. 17), to which Defendants replied. (ECF No. 18.)  Defendants' motion was referred to this Court for a report and recommendation.[1] (ECF No. 19.)

## II.  Federal Civil Rule of Procedure 12(c) Standard

Pursuant to Fed. R. Civ. P. 12(c) "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings.  The Rule 12(c) standard is the same as the standard under Fed. R. Civ. P. 12(b)(6).  *See, e.g., Ross, Brovins & Oehmke, P.C. v. Lexis Nexis Group*, 463 F.3d 478, 487 (6th Cir. 2006); *accord Horen v. Bd. of Educ.*, 594 F. Supp. 2d 833, 840 (N.D. Ohio 2009).

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Well-pleaded allegations must be taken as true and construed most favorably

---

[1] On April 21, 2011, Defendant Wagner filed a Motion for Summary Judgment.  (ECF No. 21.)  On June 3, 2011, Teare filed a responsive brief.  (ECF No. 28.)  On June 16, 2010, Defendant Wagner filed her Reply.  (ECF No. 29.)  Defendant Wagner's motion was also referred to this Court for a report and recommendation.  (ECF No. 26.)

toward the non-moving party.  *See, e.g., Mayer v. Mylod*, 988 F.2d 635, 637 (6th Cir. 1993).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions[, as] [t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

1950 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  Although a court may not

grant a Rule 12(b)(6) motion based on its disbelief of the factual allegations contained in the

complaint, *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990), a court "need not accept as

true legal conclusions or unwarranted factual inferences."  *Morgan v. Church's Fried Chicken*,

829 F.2d 10, 12 (6th Cir. 1987).  Consequently, a claim should not be dismissed unless it is

unsupported by the law or the facts alleged are insufficient.

### III.  Factual Allegations

The Complaint contains the following factual allegations:

In August of 2004, Teare was a thirteen year-old student entering the eighth grade at

Independence Middle School.  (Compl. ¶¶11, 14.)  Defendant Wagner was Teare's English,

Reading, and Homeroom teacher.  (Compl. ¶13.)

In August of 2004, the School Board announced it was placing a tax levy on the November

2004 ballot.  (Compl. ¶14.)  Teare's uncle, David Teare, was a leader of a local group called

Citizens for District Change that opposed passage of the levy.  (Compl. ¶15.)  During the

autumn of 2004, the administration of the Independence Local School District, Defendant

Wagner, and other employees promoted the passage of the levy both inside and outside the

classroom.  (Compl. ¶17.)  During this time school district officials and employees, including

Wagner, "harassed, ostracized, criticized and demeaned" Teare and her family due to her uncle's

3

opposition to the levy.  (Compl. ¶19.)

Teare supports her claim by alleging that the following statements were made to her by Wagner:

> "You need to disassociate yourself from your family."
>
> "It's a shame your family-member is publishing this information and you're in this school district; it doesn't make any sense."
>
> "Tell your uncle to stop this."
>
> "I don't appreciate my salary being published."
>
> "People will lose their jobs and kids won't go to college (if the levy fails)."

(Compl. ¶20.)

Wagner also directed the class to stand and recite a "Pledge of Allegiance" to the levy.  *Id.*  Wagner berated Teare outside of class several times for her uncle's opposition to the levy.  *Id.*  Teare received zero credit for an essay she wrote regarding the treatment she received as a result of her uncle's opposition to the levy.  *Id.*  Other students who supported the levy made constant negative comments regarding her family's opposition to the levy.  *Id.*  An unidentified member of the school administration left a telephone message at the Teare residence stating that it would be "difficult for you to show your face in this community."  *Id.*  After the levy failed, Wagner and Teare's classmates intensified their negative comments about Teare's family and their opposition to the levy.  (Compl. ¶22.)

During the time these events occurred, Teare's parents repeatedly met with school officials, including Laurenzi, complaining about the treatment their daughter was receiving.  (Compl. ¶23.)  Teare was removed from one of Wagner's classes, but remained in the other class and in

4

homeroom.  (Compl. ¶24.)  The school administration, including Defendant Laurenzi, knew or should have known about Wagner's offensive and abusive conduct.  (Compl. ¶26.)  The School Board violated Teare's rights by having a policy and practice of being deliberately indifferent to its employees retaliating against students for protected activity.  (Compl. ¶33.)

## IV.  Law and Analysis

To prove a claim under 42 U.S.C. § 1983, a plaintiff must identify a right secured by the Constitution or laws of the United States, and the deprivation of that right by a person acting under color of state law.  *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994).

**A.  Claims Against Defendant Laurenzi in His Personal Capacity**

In Count One of the Complaint, Teare alleges that her constitutional right to free speech under the First Amendment, including her right not to be compelled to speak, was violated by all Defendants.  In Count Two, Teare alleges that she was retaliated against for her uncle's exercise of his constitutional right to free speech, resulting in a violation of Teare's rights of familial association under the Fourteenth Amendment.  (ECF No. 1.)  This motion for judgment on the pleadings applies only to the School Board and Laurenzi, who was sued in both his official and personal capacity.  The Court will first address only whether Counts One and Two can be maintained against Defendant Laurenzi in his *personal* capacity.

Laurenzi asserts that the action against him in his *personal* capacity should be dismissed because he is entitled to qualified immunity, "which shields government officials from personal liability 'for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Everson v. Leis*, 556 F.3d 484, 493 (6th Cir. 2009) (*citing Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006) (*quoting*

5

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))).

> The issue of qualified immunity is essentially a legal question for the court to resolve. *Elder v. Holloway*, 510 U.S. 510, 516, 114 S. Ct. 1019, 127 L. Ed. 2d 344 (1994); *Tucker v. City of Richmond*, 388 F.3d 216, 219 (6th Cir. 2004). "In determining whether qualified immunity applies, [the court] employ[s] a two-part test, asking (1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008).

*Everson*, 556 F.3d at 494.  Once a defendant raises qualified immunity as a defense, it is the plaintiff who bears the burden of demonstrating that a defendant is not entitled to qualified immunity by showing that a right is clearly established. *Id.* (*citing Baker v. City of Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006); *Barrett v. Steubenville City Schs.*, 388 F.3d 967, 970 (6th Cir. 2004)).

### 1. Count One: First Amendment Claim

Laurenzi asserts that, even construing Teare's allegations in a light most favorable to her, no First Amendment free speech rights were violated.  (ECF No. 15 at 6.)  Laurenzi argues that the Complaint does not allege that he ever verbally abused or harassed Teare.  *Id.*  Laurenzi avers that the Complaint, at most, alleges that he merely tolerated Defendant Wagner's conduct. *Id.*  Laurenzi, relying on Sixth Circuit precedent, argues that he cannot be found liable for violating Teare's constitutional rights simply for being Defendant Wagner's supervisor when the relevant conduct occurred.

> "Supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act." *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) (citing *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (1989)). Rather, the supervisors must have actively engaged in unconstitutional behavior. *Id.* Therefore, liability must lie upon more than a mere right to control employees and cannot rely on simple negligence. *Id.*

*** 

> In order for liability to attach to any of [the defendant] supervisors, Plaintiff must prove that they did more than play a passive role in the alleged violations or show mere tacit approval of the goings on.  *Id*.  Plaintiff must show that the supervisors somehow encouraged or condoned the actions of their inferiors.  *Id*.; *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995).

*Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) ("§ 1983 liability must be based on more than respondeat superior, or the right to control employees."); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) ("[L]iability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'") (*quoting Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998), *cert. denied*, 143 L. Ed. 2d 793, 119 S. Ct. 1763 (1999)); *McKnight v. Holder*, 2011 U.S. Dist. LEXIS 31762 (E.D. Ky. Mar. 25, 2011) ("[A] plaintiff must show that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.)

Teare asserts that the allegations show more than mere "tacit approval."  (ECF No. 17 at 3.) She points to the allegations that Teare's parents repeatedly complained to Laurenzi, and argues that Laurenzi "made the conscious decision to take plaintiff out of one of Wagner's classes but to leave plaintiff in another of Wagner's classes and homeroom" leaving Teare exposed to ongoing verbal abuse and harassment.  *Id*. at 4-5.  Teare further argues that it was clearly established in 2004 that it was unlawful to punish one individual in retaliation for the protected speech of that individual's relative.  *Id*. at 6.

Reading the allegations in the light most favorable to Teare, she has not alleged any unconstitutional behavior or activity by Laurenzi.  At best, the Complaint can be construed as alleging that Laurenzi was fully aware of the actions of Wagner through the complaints made by

7

Teare's parents, yet failed to take sufficient corrective action.  Allegations of passivity, failure to act, or negligence are insufficient.  Teare has failed to set forth factual allegations that Defendant Laurenzi directly or personally participated in any verbal harassment/abuse or that he encouraged the specific misconduct of Defendant Wagner.  In addition, Teare's second argument, even if presumed to be a correct statement of the law, is inapplicable to defendant Laurenzi, as Teare has not alleged that she was punished by Laurenzi or that he retaliated against her in any way.

Teare has not established that she had a clearly established right to have Defendant Laurenzi stop the alleged behavior of Wagner.  Therefore, it is recommended that Count One against Defendant Laurenzi in his personal capacity be dismissed with prejudice as he is immune from such liability.

### 2.  Count Two: Familial Association Claim

Teare's cause of action under Count Two is less than clear.  She avers that Defendant Laurenzi, along with all other Defendants, violated her right of familial association as guaranteed by the Fourteenth Amendment when she was retaliated against due to her uncle's opposition to the school levy.  (ECF No. 1 at ¶¶37-39.)

First, Teare's second cause of action against Laurenzi in his personal capacity fails for the same reason as the first – she has alleged only a failure to act as opposed to direct retaliation by Laurenzi.  In addition, the Complaint does not allege any activity by Laurenzi that interfered with Teare's ability to associate with her uncle.

Defendants aver that a right to familial association has only been found to exist with respect to parent-child relationships or situations where a relative was acting in the place of a

8

parent.[2]  (ECF No. 18 at 10.)  Since Laurenzi has raised qualified immunity as a defense, Teare bears the burden of demonstrating that she had a clearly established federal constitutional right of familial association with her uncle.  Teare has failed to do so.  In her response to Defendants' motion for judgment on the pleadings, Teare does not cite any binding authority from the United States Supreme Court or the Sixth Circuit Court of Appeals suggesting that she has a right to familial association with her uncle.  (ECF No. 17 at 16-18.)  Teare's citation to a Tenth Circuit Court of Appeals' decision is also unavailing, as that case merely discusses the two types of associational rights.  *Griffin v. Strong*, 983 F.2d 1544, 1546 (10th Cir. 1993); *see also Roberts v. United States Jaycees*, 468 U.S. 609, 617-618 (1984) ("Our decisions have referred to constitutionally protected "freedom of association" in two distinct senses.  In one line of decisions, the Court has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme....  In another set of decisions, the Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment -- speech, assembly, petition for the redress of grievances, and the exercise of religion.")

Neither *Griffin* nor *Roberts* stand for the proposition that there is a familial right of association outside immediate family members.[3]  Though a district court in California allowed a

---

[2]  *See, e.g., Johnson v. City of Cincinnati*, 310 F.3d 484, 501 (6th Cir. 2002) (finding that plaintiff, who had regularly participated in the care of her minor grandchildren, had a fundamental freedom of association right to participate in their upbringing).

[3]  In her response, Teare asks that the Court grant her leave to amend the Complaint to add a First Amendment "familial association" claim.  (ECF No. 17 at 17.)  This Court, however, will not issue a *sua sponte* order without an actual motion filed on the docket.

plaintiff to maintain a First Amendment right of familial association claim, the facts of that case are distinguishable.  *Torre v. City of Salinas*, 2010 U.S. Dist. LEXIS 97725 (N.D. Cal. Sept. 17, 2010) (parents sued a municipal defendant for the death of their epileptic daughter after police officers shot and tasered her).

Teare has not established that she had a clearly established right of familial association with her uncle, regardless of whether that claim is made under the First or Fourteenth Amendments.  Therefore, it is also recommended that Count Two against Defendant Laurenzi in his personal capacity be dismissed with prejudice as he is immune from such liability.

**B.  Claims Against the School Board and Laurenzi in His Official Capacity**

First, as Teare essentially concedes in her response, "[a] suit against an individual 'in his official capacity' has been held to be essentially a suit directly against the local government unit."[4]  *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989).  Therefore, the claims against Defendant Laurenzi in his *official* capacity is actually a cause of action against

_____

Furthermore, the Supreme Court's decision in *Roberts* did not find that the right to associate for the purpose of engaging in protected First Amendment activity was in any way related to *familial* association.  As such, Teare has not identified any clearly established law suggesting the existence of a "First Amendment familial association claim."  Therefore, amending the Complaint would be futile.  "[I]t is well settled law that [a] district court may deny a motion to amend if the court concludes that the pleading as amended could not withstand a motion to dismiss."  *Martin v. Assoc. Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir. 1986) (*citing Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980)); *see also Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).  In other words, where the amendment would be futile, there is no reason to allow it.  *See, e.g., Frank v. Dana Corp.*, 2009 U.S. Dist. LEXIS 77030 at *43 (N.D. Ohio Aug. 25, 2009).

[4]  Defendants School Board and Laurenzi assert that the action against Laurenzi, in his official capacity is redundant of the claim against the School Board.  (ECF No. 15 at 4.)  Teare concedes this point in her response.  (ECF No. 17 at 2.)

the School Board itself.  *See, e.g., Ky. v. Graham*, 473 U.S. 159, 167 (1985) ("There is no longer a need to bring official-capacity actions against local government officials, for under *Monell, supra,* local government units can be sued directly for damages and injunctive or declaratory relief."); *Thigpen v. Reid*, 2010 U.S. Dist. LEXIS 130359 at **3-4 (N.D. Ohio Dec. 9, 2010) ("when [a government official is] sued in his official capacity under section 1983, the suit is actually against the [governmental entity]").  As such, Defendant Laurenzi, in his official capacity, cannot be found liable.  The action is viable *only* against the School Board.  Therefore, for purposes of addressing official capacity liability under Counts One, Two, and Three, the Court will simply refer to the School Board as the sole defendant.

Defendant School Board contends that it is entitled to judgment on the pleadings because: (1) it cannot be held liable on the basis of *respondeat superior*; and, (2) the Complaint has failed to allege a policy or practice of the School Board that was the moving force behind the alleged constitutional violation.  (ECF No. 15 at 16-20.)

Defendants are correct that § 1983 "does not permit a plaintiff to sue a local government entity on the theory of respondeat superior."  *Gregory v. City of Louisville*, 444 F.3d 725, 752-753 (6th Cir. 2006); *see also Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978) ("[§1983] cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor.")  Therefore, Teare cannot maintain an action against the School Board solely due to Defendant Wagner's actions, as "[a] plaintiff may only hold a local government entity liable under § 1983 for the entity's own wrongdoing."  *Id*.  The Sixth Circuit has explained that a local government entity, such as the School Board, violates § 1983 where its "official policy or custom actually

11

serves to deprive an individual of his or her constitutional rights." *Id*.

> A city's custom or policy can be unconstitutional in two ways: 1) facially
> unconstitutional as written or articulated, or 2) facially constitutional but
> consistently implemented to result in constitutional violations with explicit or
> implicit ratification by city policymakers. *Id*.  Where the identified policy is itself
> facially lawful, the plaintiff "must demonstrate that the municipal action was
> taken with 'deliberate indifference' as to its known or obvious consequences.  A
> showing of simple or even heightened negligence will not suffice." *Bd. of
> County Comm'rs v. Brown*, 520 U.S. 397, 407, 117 S. Ct. 1382, 137 L. Ed. 2d
> 626 (1997) (quoting *Harris*, 489 U.S. at 388 (1989)).  "Deliberate indifference is
> a stringent standard of fault, requiring proof that a municipal actor disregarded a
> known or obvious consequence of his action."  *Brown*, 520 U.S. at 410.  In other
> words, the risk of a constitutional violation arising as a result of the inadequacies
> in the municipal policy must be "plainly obvious."  *Id*. at 412; *see also Stemler v.
> City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997).

*Gregory*, 444 F.3d at 752-753.  Therefore, "'municipal liability under § 1983 attaches where --

and only where -- a deliberate choice to follow a course of action is made from among various

alternatives' by city policymakers."  *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (citing

*Pembaur v. Cincinnati*, 475 U.S. 469, 483-484 (1986); *Oklahoma City v. Tuttle*, 471 U.S. 808,

823 (1985)); *King v. Marion County Sheriff's Dep't*, 2010 U.S. Dist. LEXIS 64205 (E.D. Tenn.

June 28, 2010) ("Plaintiffs must identify the policy, connect the policy to the county itself, and

show the particular injury was incurred because of the execution of that policy.")  Counts One

and Two cannot be maintained purely on a *respondeat superior* basis.  Therefore, the allegations

that Wagner or Laurenzi, employees and/or agents of the School Board, violated Teare's rights

are insufficient by themselves to attach liability on the School Board.  Unless the School Board

had a policy or practice that resulted in the deprivation of Teare's constitutional rights, Counts

One and Two must be dismissed.  Count Three, however, alleges that the School Board did

indeed have such a policy or practice.  Therefore, the Court will proceed straight to Count

Three, as it is also dispositive of Counts One and Two.

Here, Teare has failed to identify any actual custom or policy that was the moving force behind the alleged constitutional violations.  Her "factual" allegations in this regard amount to nothing more than legal conclusions.  Teare's vague allegation in the Complaint – that the School Board had a policy or practice of acting with deliberate or reckless indifference when there has been a constitutional violation by an employee – is insufficient.  (ECF No. 1 at ¶¶26, 33.)  Under the standards established by the Supreme Court in the *Iqbal* and *Twombly* decisions, allegations that amount to nothing more than legal conclusions, which merely recite the elements of a cause of action as conclusory statements, need not be taken as true.  In the Complaint, Teare, seizing upon the language cited above as it pertains to municipal liability in § 1983 cases, merely offers the conclusion that the School Board had a policy or practice that was tantamount to "deliberate indifference."  This legal conclusion, without more, is not entitled to any deference.

Furthermore, in addition to failing to allege any policy or custom of the School Board that was the moving force behind the alleged harassment, Teare has not identified any action taken by the School Board or by Superintendent Laurenzi that caused the deprivation of her rights.  Construing Teare's actual factual allegations as true, the School Board, through the complaints of Teare's parents to Laurenzi or other school officials, may have known about the alleged verbal abuse and/or harassment.  This allegation, however, fails to rise to the level of a viable § 1983 claim.  A showing of simple or even heightened negligence does not suffice to make out a claim.

Defendants persuasively cite another district court from within this circuit:

> In most cases, once an individual's rights have been violated, a subsequent failure
> to conduct a meaningful investigation cannot logically be the "moving force"

13

behind the alleged constitutional deprivation. *See Tompkins v. Frost*, 655 F.
Supp. 468, 472 (E.D. Mich. 1987)("wrongful conduct after an injury cannot be
the proximate cause of the same injury"); *Fox v. VanOosterum*, 987 F. Supp. 597,
604 (W.D. Mich. 1997) (argument that decision not to investigate, made after
alleged violation took place, somehow caused that violation, defies logic). For
this reason, mere ratification of the conduct at issue does not generally subject a
municipality to § 1983 liability.  However, in some cases, the municipality may
be held liable where its failure to conduct an investigation or discipline the
accused rises to the level of "a policy of acquiescence that in itself was a 'moving
force.'"  *See Alexander v. Beale St. Blues Co., Inc.*, 108 F. Supp. 2d 934, 949
(W.D. Tenn. 1999)("[a]lthough ratification may tend to establish the existence of
a policy of acquiescence that in itself was a 'moving force,' mere ratification of
the conduct at issue by itself cannot legally suffice as a 'moving force.'").

*Daniels v. City of Columbus*, 2002 U.S. Dist. LEXIS 28130 at **16-17 (S.D. Ohio Feb. 20,

2002).  Here, the Court finds that the allegations can only be construed as leveling an accusation

that the School Board failed to conduct a reasonable investigation into the complaints made by

Teare's parents or, that upon learning of the complained of misconduct, the School Board failed

to take sufficient action since Laurenzi only transferred Teare out of one of the three classes she

had with Defendant Wagner.  This allegation, at best, amounts to nothing more than a mere

failure to act (or act sufficiently) and cannot reasonably be construed as the moving force behind

the alleged constitutional violations.  In *Beale St. Blues Co.*, 108 F. Supp. 2d at 949, a court in

the Western District of Tennessee observed that "[u]nder the liberal pleading requirements of the

federal rules, all a plaintiff need do to set forth a cognizable § 1983 claim against a municipality

... is allege that agents of the municipality, while acting under color of state law, violated the

plaintiff's constitutional rights, and that a municipal policy or policy of inaction was the moving

force behind the violation.  No further factual specificity is required at the initial pleading

stage."  However, *Beale St. Blues Co.* was decided in 1999, before *Iqbal* and *Twombly*.  This

Court is convinced that the mere assertion that there was a "policy of inaction" is no longer

14

sufficient to maintain a complaint.

Furthermore, Teare must demonstrate a "direct causal link" between official action or inaction and the deprivation of rights, "such that the 'deliberate conduct' of the governmental body is the 'moving force' behind the alleged injury."  *Waters v. City of Morristown*, 242 F.3d 353, 361-362 (6th Cir. 2001) (*citing Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).  Teare's allegations may support the inference that the School Board took insufficient action after being apprised of the questionable course of conduct of Defendant Wagner, but do not support the inference that the School Board: (a) had a pre-existing policy or a custom of inaction in the face of unconstitutional conduct towards its students, or (b) encouraged its employees to retaliate against students (or their families) who exercised their free speech rights. Further, there is no allegation that the School Board failed to properly train Defendant Wagner, or that Wagner, or any other teacher, engaged in previously tolerated constitutional violations. Although the allegation is that Defendant Wagner's conduct was ongoing from the beginning of the school year until after the November elections, there is no allegation that would allow this Court to construe the School Board's alleged policy of deliberate indifference as the moving force behind the constitutional violations.  One teacher's single course of conduct does not establish a policy or custom.  *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 390-91 (1989) (That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.); *cf. Thomas v. City of Chattanooga*, 398 F.3d 426, 430-31 (6th Cir. 2005) (holding a policy or custom cannot be established based on a single incident of potential misconduct of a city employee.)

15

The factual allegations before this Court do not sufficiently allege that the School Board had a policy, practice, or custom that resulted in the deprivation of Teare's clearly established federal rights.  As such, the claims against Defendant School Board should be dismissed.

### V.  Conclusion

It is recommended that the Defendant School Board and Defendant Laurenzi's Motion for Judgment on the Pleadings (ECF No. 15) be GRANTED.  Specifically, it is recommended that Counts One through Three of the Complaint be dismissed with prejudice with respect to Defendant School Board and Defendant Laurenzi.[5]

/s/ Greg White
U.S. Magistrate Judge

Date: <u>August 18, 2011</u>

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

---

[5] Count Four of the Complaint was brought only against Defendant Wagner. (ECF No. 1 at ¶¶43-45.)

16